UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA WOODARD,

Plaintiff,

v.                                          CASE No.  8:09-CV-149-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of
her claims for Social Security disability benefits and supplemental security
income payments.[1] Because the decision of the Commissioner of Social
Security is supported by substantial evidence and does not contain any
reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-one years old at the time of the
administrative hearing and who has the equivalent of a high school education,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 12).

has worked as a security guard, cashier, security monitor, and stocker (Tr. 444, 467). She filed claims for Social Security disability benefits and supplemental security income payments. The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "reflex sympathetic dystrophy (RSD) of the right hand, right shoulder tendonitis, noninsulin dependent diabetes mellitus (NIDDM) and hypertension" (Tr. 15).[2] The law judge concluded that these impairments restricted the plaintiff to light work with the following restrictions (Tr. 18):

> She can occasionally reach, finger (fine manipulation), handle (gross manipulation), feel, reach, push and pull with the right upper extremity. She has no significant left upper extremity limitations. She can occasionally perform postural activities. She has no visual or communicative limitations. She should avoid concentrated exposure to extreme temperatures, humidity and vibration. She can remember, understand and carry out instructions and relate well with others. Her

---

[2]RSD is a chronic pain syndrome most often resulting from trauma to a single extremity. SSR 03-2P, 2003 WL 22399117 at *1 (S.S.A.). In this case, the plaintiff incurred trauma to her right hand in November 2004, which lead to RSD, when she was involved in an altercation unrelated to work (Tr. 451-52).

pain is not of the level of severity as to interfere
with these activities.

Based upon the testimony of a vocational expert, the law judge found that,

despite these limitations, the plaintiff could return to past relevant work as a

security guard and security monitor (Tr. 27). Consequently, the plaintiff was

found to be not disabled. The Appeals Council let the decision of the law

judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Act, is one "that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The

Act provides further that a claimant is not disabled if she is capable of

performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

-3-

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11ᵗʰ Cir. 1988).

## III.

The plaintiff challenges the law judge's decision on four grounds. None warrants a reversal.

A. The plaintiff argues, first, that the law judge's analysis of her past relevant work was inadequate (Doc. 18, p. 10).[3] This contention is meritless.

The law judge determined that the plaintiff could return to her prior jobs of security guard and security monitor (Tr. 27) based upon testimony to that effect by the vocational expert (Tr. 469). The plaintiff

---

[3]The plaintiff's first issue contends (twice) that the law judge erred in finding that the "Plaintiff could return to her past work as a small parts delivery driver" (Doc. 18, pp. 2, 10). However, the plaintiff had never worked as a delivery driver, and the law judge did not find that she had.

asserts that she never performed the job of security monitor that was identified by the vocational expert as DOT #379.367-010 (Doc. 18, p. 11).[4] The vocational expert testified that she reviewed the exhibits contained in the transcript that pertain to the plaintiff's background and that she did not need any further information about the plaintiff's past work in order to testify adequately (Tr. 466). As indicated, the expert included security monitor among the plaintiff's past work. The plaintiff's counsel at the hearing did not challenge that testimony in any way. Consequently, there was no evidence contradicting the expert's testimony that past work of the plaintiff was categorized as security monitor. Significantly, the plaintiff bears the burden of proving that she can no longer perform her past relevant work. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

Furthermore, the plaintiff's challenge fails if there is substantial evidence that the plaintiff could perform her prior job of security guard. The plaintiff does not contest that she actually performed that job since she testified that she has worked as a security guard for "half of [her] life" (Tr. 450).

---

[4] As the plaintiff correctly points out, that job is entitled "surveillance-system monitor" in the Dictionary of Occupational Titles (Doc. 18, p. 11).

The plaintiff contends that the law judge did not adequately consider the physical and mental demands of her security positions as she performed them, which, according to her Work History Report, required her to lift up to fifty pounds and write, type, or handle small objects four hours a day (Doc. 18, p. 10). However, at the hearing, the law judge asked the vocational expert whether a person with the same age, education, and experience as the plaintiff would be able to perform the plaintiff's past work with essentially the same restrictions as the law judge included in the plaintiff's residual functional capacity (Tr. 468-69). The expert testified in response that such an individual would be able to perform the jobs of security guard and security monitor (Tr. 469). This testimony provides substantial evidence to support the law judge's finding that the plaintiff could at least perform those jobs as they are performed in the national economy. As the Commissioner correctly points out, it is sufficient if the plaintiff can perform past work as it is performed in the national economy, even if she could not presently perform it as she had actually performed it. Jackson v. Bowen, 801 F.2d 1291, 1294 (11th Cir. 1986).

Moreover, the plaintiff's reliance upon the Dictionary of Occupational Titles ("DOT") is unavailing (Doc. 18, p. 11). In the first place, the expert testified that her testimony was consistent with the DOT (Tr. 469). Moreover, the law judge relied upon the testimony of the vocational expert, and not the DOT (Tr. 27). "The DOT itself states that it is not comprehensive" and instructs users to supplement the data with local information. Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999). Consequently, under the law of the Eleventh Circuit, even if there were a conflict in this case between the DOT and the expert's testimony, the expert's testimony would trump the DOT. Id. at 1229-30. Therefore, the law judge could reasonably rely upon the expert's testimony that the plaintiff could perform the job of security guard and security monitor. And, as indicated, that testimony provides substantial evidence supporting the law judge's finding that the plaintiff could return to prior work.

B. The plaintiff asserts that the law judge erred because his hypothetical question to the vocational expert failed to include the various effects of hypertension, anemia, obesity, depression, left hand pain, high blood sugar, neuropathy, and side effects of medications, including fatigue,

weakness, blurred vision, dizziness, and swelling of the legs (Doc. 18, pp. 12-14). The plaintiff's argument on this issue is misdirected at the hypothetical question.

Symptoms are not appropriately included in the hypothetical question to the vocational expert. Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1270 (11th Cir. 2007). Rather, they are to be considered by the law judge in determining the functional limitations in his finding of the plaintiff's residual functional capacity. Accordingly, the proper challenge regarding an alleged inadequate assessment of symptoms attacks the determination of the residual functional capacity, and not the hypothetical question.

In this case, the hypothetical question appropriately included the functional limitations the law judge found to exist. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of

Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004). Here, the residual functional capacity found by the law judge (Tr. 18) coincided with the limitations included in the hypothetical question posed to the vocational expert (Tr. 468-69). Consequently, the hypothetical question was not flawed.

Importantly, the plaintiff did not develop any challenge to the law judge's determination of the plaintiff's residual functional capacity. The scheduling Order provided that "[t]he Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged," and must support those challenges "by citations to the record of the pertinent facts" (Doc. 13, p. 2). Not only has the plaintiff failed to identify a challenge to the residual functional capacity determination, but she has not cited to any medical evidence which would support such a challenge. Consequently, any challenge to the residual functional capacity determination is deemed waived.

It is appropriate to add that, in the absence of any citations to pertinent medical evidence, the plaintiff plainly cannot demonstrate that the evidence compels functional limitations not found by the law judge. While, as indicated, the plaintiff refers to various medical conditions (although

without citations to the medical evidence), those conditions do not suffice to show that the law judge's determination of the plaintiff's residual functional capacity was erroneous. It is the functional limitations from an impairment, and not the diagnosis, that is determinative in an evaluation of disability. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The law judge has not pointed to any record evidence showing that the plaintiff has greater functional limitations than found by the law judge.

C. In her third argument, the plaintiff asserts that the law judge failed to give proper weight to the opinions of the plaintiff's treating primary care physician, Dr. Dexter Frederick (Doc. 18, p. 14). Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

At the plaintiff's request, Dr. Frederick, on three separate occasions, composed short conclusory statements regarding the plaintiff's inability to work (Tr. 79, 80, 274). For example, on April 20, 2005, Dr. Frederick wrote "[s]he suffers from a debilitating neurological condition that causes severe right arm pain and weakness. She presently is unable to work and will not be able to work for at least a [sic] 12 months" (Tr. 79).

The finding of disability is an issue reserved to the Commissioner. 20 C.F.R. 404.1527(e), 916.927(e). Thus, the regulations provide that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. 404.1527(e)(1), 416.927(e)(1). This reflects that an award of benefits requires a claimant to meet criteria specified in the Social Security law rather than satisfy a doctor's vague perception of what constitutes a disability. Moreover, an opinion by a doctor that a plaintiff is disabled involves, to some extent, an undertaking by a medical expert of a matter that falls within the expertise of a vocational expert.

In this case, the proper evaluation of disability involves an assessment of the plaintiff's residual functional capacity. 20 C.F.R.

404.1520(a)(4), (e); 416.920(a)(4), (e). The comments from Dr. Frederick did not shed any meaningful light on that determination. Thus, he provided no explanation for his conclusory statements, nor did he set forth any findings regarding the plaintiff's ability to do such activities as reach, finger, handle, or feel.

Moreover, the law judge gave the following explanation for discounting Dr. Frederick's opinions (Tr. 24-25):

> In April 2005, the claimant asked Dr. Frederick, her clinic doctor, to give her a letter of disability rather than Dr. [Erick] Grana, her treating specialist. Dr. Frederick stated the claimant suffered from a debilitating neurological condition that caused severe right arm pain and weakness. He further opined the claimant was unable to work and would be unable to work for at least 12 months. The undersigned gives little weight to this opinion. Although Dr. Frederick is a treating source, Dr. Grana is the claimant's treating specialist for her right upper extremity impairments. Dr. Frederick's opinion is inconsistent with the objective, clinical findings of only tenderness and limitation of motion of the right hand and shoulder. Records do not reflect the claimant's pain is debilitating, but rather that it is well controlled with medications prescribed by Dr. Grana. ... Dr. Frederick stated again in July 2005 that the claimant's right hand impairment was debilitating and it prevented her from using her right hand. The undersigned finds this opinion is

also inconsistent with the objective, clinical findings. Dr. Grana has not opined the claimant has such severe limitations. Dr. Grana's exam in September 2005 showed the claimant had normal sensation, reflexes and motor strength of the right upper extremity. Her only positive, objective, clinical findings were of decreased right shoulder motion with complaints of pain on internal rotation and tenderness in the right hand and shoulder. Dr. Frederick opined in October 2005 that the claimant was unable to work due to disabling upper and lower extremity condition, but that opinion is given little weight as it is inconsistent with the medical records. Dr. Grana noted the claimant's pain was well controlled with medications in November and December 2005 and the claimant did not report adverse side effects of her medications.

In February 2006 Dr. Frederick also advised the claimant to start physical therapy and exercise. He did not tell the claimant that she should avoid all activity. Dr. Grana continued to find the claimant's right shoulder and hand pain was well controlled in March and April 2006.

The plaintiff does not meaningfully controvert these reasons. She merely looks to portions of the law judge's lengthy explanation in an attempt to show that his reasoning was flawed (Doc. 18, p. 15). For example, the plaintiff asserts that it was error for the law judge to discount Dr. Frederick's opinion because he was not a specialist, since her pain specialist, Dr. Grana, did not set forth any limitations (Tr. 24). However, a specialist's

opinion may be entitled to more weight than a non-specialist's opinion. 20 C.F.R. 404.1527(d)(5), 416.927(d)(5). Consequently, the lack of any limitations by Dr. Grana is relevant in this case and appropriately weighed by the law judge.

The plaintiff also complains that Dr. Grana "was never asked to give an opinion regarding Plaintiff's ability to work" (Doc. 18, p. 15). As indicated, it is the plaintiff's burden to prove that she is disabled. Since the plaintiff was capable of asking Dr. Frederick for a letter of disability (see, e.g., Tr. 325), she obviously could have obtained one from Dr. Grana, if he was willing to provide such a letter.

The plaintiff also refers to the fact that the law judge gave great weight to the opinions of the non-examining, reviewing physicians (Tr. 26-27). While those opinions support the law judge's findings regarding the plaintiff's residual functional capacity, he did not simply accept those opinions. In the first place, the two opinions are not exactly the same, and the law judge's residual functional capacity differs from each of them (compare Tr. 18 with Tr. 299, 300, 302, and with Tr. 357, 359). Furthermore, the law judge evaluated the medical evidence in detail and at length. He reasonably

concluded that the opinions of the non-examining reviewing doctors are "consistent with the objective, clinical findings and with the reports of updated medical records" (Tr. 27).

Thus, this is not a case where the law judge merely relied upon the opinions of non-examining reviewing doctors. Rather, the law judge's findings regarding the plaintiff's residual functional capacity are supported by substantial evidence in the medical record. The plaintiff, as previously explained, has not even attempted to show otherwise.

The plaintiff, therefore, has failed to mount a meaningful attack on the law judge's determination to discount Dr. Frederick's opinions. Moreover, the law judge's detailed explanation provides good cause for rejecting those opinions.

D. The plaintiff's final argument is that the law judge failed to apply the Eleventh Circuit pain standard in evaluating the plaintiff's subjective complaints of right hand pain resulting from RSD (Doc. 18, p. 16). This contention lacks merit.

The plaintiff testified at the hearing that she cannot lift a gallon of milk with her right hand (Tr. 456). She said that she cannot grasp, finger,

handle, or lift more than five pounds (id.). Further, she stated that she can stand for about five minutes and that her medications made her dizzy, woozy, drowsy, and sleepy (Tr. 461-62). The law judge acknowledged the plaintiff's testimony in his decision, but did not find it fully credible (Tr. 20-27).

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge referred to the pertinent regulations and Social Security Rulings governing the assessment of subjective complaints (Tr. 18).

Moreover, he set forth the controlling principles (id.). This demonstrates that the law judge applied the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge found RSD to be a severe impairment of the plaintiff's right hand (Tr. 15). However, the law judge did not find the plaintiff's testimony regarding this impairment entirely credible (Tr. 25). He explained (id.):

> She alleged at the hearing that she has no movement in 3 fingers on the right hand, but that allegation is not supported by the medical evidence of record. She stated she cannot lift a gallon of milk or more than 5 pounds, but records indicate the claimant has normal motor strength of the right upper extremity. The claimant's testimony of average daily pain at the level of 9/10 are also inconsistent with Dr. Grana's records which show her pain is well controlled with medications. The undersigned finds the claimant's right upper extremity impairments result in some limitation of function, but not to the extent alleged by the claimant and not to the extent as to preclude the performance of all work-related activities.

This explanation, which is supported by substantial evidence, is sufficient to discount the plaintiff's testimony of disabling impairments of the right upper

extremity.  See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006) (unpub. dec.).

The law judge's determination that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" is supported by the law judge's evaluation of the plaintiff's allegation regarding a left hand impairment (Tr. 20).  The plaintiff testified that she developed RSD in her left hand and that she could not even lift a gallon of milk or anything over five pounds with that hand (Tr. 456). As the law judge noted, the plaintiff's testimony regarding when that problem developed is inconsistent (Tr. 452-55).  Moreover, the law judge pointed out that the plaintiff's alleged chronic severe left hand pain is not supported by objective clinical findings (Tr. 16).  Accordingly, the law judge found that the plaintiff did not even have a severe impairment of the left hand, and the plaintiff has not challenged that finding.

The plaintiff's exaggerated allegation of a severe left hand problem sheds substantial light upon her overall credibility.  It provides additional support for the law judge's determination that her testimony concerning her right hand condition was not entirely credible.

In her last sentence on this issue, the plaintiff throws in the assertion that "[t]here is also no legally sufficient explanation at all for the ALJ's rejection of the Plaintiff's testimony regarding her fatigue, inability to stand and dizziness due to the side effects of her medications, hypertension and high blood pressure" (Doc. 18, p. 18). This one-sentence argument, which does not have any record citations, is properly deemed abandoned for lack of proper development because it does not comply with the scheduling Order's requirement that the plaintiff support her challenges with "citations to the record of the pertinent facts" (Doc. 13, p. 2).

In all events, the law judge did explain, in detail and at length, his reasons for rejecting this testimony (see Tr. 24-26). Accordingly, the plaintiff's undeveloped argument is baseless.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 28th day of January, 2010.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE